UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR A SEARCH ) <br> WARRANT ORDER FOR ) <br> Samsung Galaxy S4, model SCH-R970C, ) <br> PMI 102796, Serial number 99000349061232; ) <br> Samsung Galaxy S2, model SPH-D710, ) <br> MAC 5001BB8DFD5F, DEC268 435461714161985, ) <br> HEX A0000039D81841; ) <br> Verizon Motorola, MEID HEX A0000022992E8D, ) <br> MSN K566NUKQ68, ) <br> SJUG5853CC, FCC ID IHDT56LB1; ) <br> Apple I-phone 5S, serial number F19LWAUCFFDQ ) <br> ) | MAG NO. <br><br><br><br><br><br><br><br><br><br><br> UNDER SEAL |

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Sonia Bush, Special Agent (SA) with the Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington, D.C. (hereinafter affiant), being duly sworn, depose and state as follows:

### INTRODUCTION

1. I have been a Special Agent with the FBI since 2008, and I am currently assigned to the Violent Crimes Squad CR-2, Criminal Division of the Washington Field Office of the FBI. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. During my career thus far, I have participated in numerous criminal investigations, to include bank robberies, extraterritorial offenses, carjackings, commercial robberies, kidnappings, armored car robberies and active shooter homicide investigations, and have participated in the execution of numerous search and arrest warrants.

2. During the course of my participation in the investigation of violent crimes, I have

gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, consensually monitored recording , investigative interviews, trash covers, financial investigative, the service of Administrative and Grand Jury Subpoenas, analyzing telephone pen register and caller identification system data, cell site data, cellular telephone toll records, text messages, conducting court-authorized electronic surveillance and the execution of search and arrest warrants. Through instruction and participation in investigations, I have become familiar with the manner in which criminal offenders utilize cellular telephones to assist and aid their criminal activity. Coconspirators often coordinate before, during, and after offenses to identify targets of crime, arrange for escape, and arrange meetings to share the proceeds of their illegal activity.

3. As a result of my personal participation in this investigation, as well as through interviews with and analysis of reports submitted by other government agencies, I am familiar with this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the following facts to show there is probable cause to believe the information contained in the following cell phones will provide evidence of activity of crime, including but not limited to: 1) bank fraud, in violation of 18 U.S.C. § 1344; 2) fraud by wire, radio, or television, in violation of 18 U.S.C. § 1343; 3) transportation of stolen vehicles in violation of 18 U.S.C. § 2312; 4) transportation of stolen goods in violation of 18 U.S.C. 2314; 5) conspiracy to commit such offenses, in violation of 18 U.S.C. § 371 (the "Target Offenses"); 6) carjacking, in violation of 22 D.C. Code § 2803; 7) unauthorized use of a motor vehicle in violation of 22 D.C. Code § 3215; 8) and robbery in violation of 22 D.C. Code § 2801 will be found within the cellular telephone described above and in Attachment A.

## THE INVESTIGATION

4. In August of 2013, a Confidential Witness (herein referred to as "CW") informed law enforcement agents with information about a group of individuals involved in committing violent robberies, purse snatchings at gas stations, and car-jackings throughout the District of Columbia and Maryland area. The CW was under Court supervision on supervised release and provided information after the CW's arrest on a misdemeanor charge. The CW agreed to assist law enforcement in order to benefit with regard to his pending case and his supervised release. No promises were made to CW regarding possible outcomes. The CW has yet to provide false or misleading information to the affiant or other members of law enforcement. Information provided by the CW has been corroborated by telephone calls, surveillance, and audio and video recordings.

5. The CW indicated SPECIAL PRICE (herein referred to as PRICE) and her mother SYLVIA JUANITA PRICE are the leaders of a crew committing snatch and grab robberies at gas station, carjacking and violent robberies to obtain the victims personal identification, financial documents, and credit cards for the purposes of committing check fraud, bank fraud, fabricating of counterfeit documents, and identity theft. The CW advised PRICE's cellular telephone number is 202-465-9307.

6. The CW introduced a Metropolitan Police Department (MPD) undercover police officer (herein referred to as "UC") to PRICE under the guise that the UC was a manager at a SunTrust Bank. On September 17, 2013, UC electronically monitored a telephone conversation with PRICE. UC contacted PRICE at 202-465-9307. PRICE requested a meeting with UC to discuss obtaining UC's assistance with cashing stolen checks. PRICE met UC in an undercover vehicle located in the parking lot of the SunTrust Bank located at 410 Rhode Island Avenue, N.E., Washington, D.C. The meeting was audio and video recorded. PRICE presented UC with

two stolen personal checks, which she forged in the presence of the UC: a SunTrust check in the amount of $500 and a Citibank check in the amount of $400. The UC exited the vehicle and entered SunTrust Bank to give the false impression that he was going inside the bank to cash the stolen checks. Upon returning to the vehicle the UC provided PRICE with $900 in purported cash received from SunTrust Bank, however the cash was in fact provided by MPD. PRICE returned $200 ($100 per check) to the UC and indicated it was his compensation for assisting with cashing the checks.

Law enforcement contacted the owners of the checks who confirmed that their checks were stolen while at gas stations in Prince George's County, Maryland.

PRICE explained to the UC that she receives six to seven stolen purses per day from unidentified individuals who steal the purses from victims. PRICE indicated she pays the subjects for the stolen purses. PRICE explained that recent news stories reporting on purses snatched from gas station while the victim was pumping gas is one method her purse suppliers use to obtain purses.

7.  On September 25, UC received a telephone call from PRICE. PRICE called from 202-465-9307. PRICE requested a meeting with UC to cash stolen checks. PRICE met UC in an undercover vehicle located in the parking lot of the Sun Trust Bank located at 410 Rhode Island Avenue, N.E., Washington, D.C. The meeting was audio and video recorded. PRICE presented UC with one stolen personal check from SunTrust Bank in the amount of $500, which she forged in the presence of the UC. Additionally, PRICE provided UC with a stolen State of Maryland driver's license. The name on the check and the driver's license were the same. The UC provided PRICE with $500 in purported cash received from SunTrust Bank, however the cash was in fact provided by MPD. PRICE returned $100 to the UC and indicated it was his compensation for assisting with cashing the check.

The owner of the check and driver's license was contacted and stated she had been the victim of a robbery at a gas station in Prince George's County, Maryland.

8. On October 30, 2013 TROY SHERMAN and TYWAN JACKSON were arrested together by the Prince George's County Police Department for carjacking, car theft, and purse thefts. Law enforcement investigations have linked SHERMAN and JACKSON to a multiple car-jackings and thefts in the Washington D.C. metropolitan area. Law enforcement seized JACKSON and SHERMAN'S cell phone at the time of the arrest. JACKSON cellular phone is described as follows: Samsung Galaxy S4, model SCH-R970C, PMI 102796, Serial number 99000349061232. SHERMAN and JACKSON were interviewed and provided investigators with their cellular telephone numbers. SHERMAN indicated his cellular number was 202-246-9508. JACKSON indicated his cellular number was 202-710-2859. Officers dialed the numbers provided to verify that they were the numbers linked to the phones.

9. On October 31, 2013 law enforcement agents reviewed SPECIAL PRICE historical cellular toll records. It was determined that SHERMAN, cellular telephone 202-246-9508, had multiple contacts with SPECIAL PRICE's, cellular telephone 202-465-9307, from September 1, 2013 through October 22, 2013. On January 28, 2014, an agent reviewed data from SHERMAN's cell phone and determined that PRICE and SHERMAN also had contact on October 25, 2013 and October 28, 2013.

10. On January 24, 2014, TYWAN JACKSON, CARLOS BENJAMIN, JAVON SMITH, and DAVON WHITAKER were arrested by the Metropolitan Police Department (MPD) in a stolen vehicle which they crashed in the 3100 block of V. Street NE, Washington, D.C. while trying to flee from authorities. The four defendants fled on foot immediately following the crash, but where appended shortly afterwards by authorities. Several stolen purses, a controlled substance, and a firearm where located inside the stolen vehicle. The defendants'

cellular telephones were seized pursuant to their arrest. Three of those cellular phones recovered are as follows: 1) Samsung Galaxy S2, model SPH-D710, MAC 5001BB8DFD5F, DEC268 435461714161985, HEX A0000039D81841; 2)Verizon Motorola, MEID HEX A0000022992E8D, MSN K566NUKQ68, SJUG5853CC, FCC ID IHDT56LB1; 3) Apple I-phone 5S, serial number F19LWAUCFFDQ. The Samsung Galaxy S2 was found near the front center console next to the driver's seat of the stolen vehicle. The Verizon Motorola was found on the rear passenger floor of the stolen vehicle. The Apple I-phone was found on the ground along the path in which the suspects fled. A fourth cellular phone was found on the rear passenger floor, however it was damaged, and therefore data cannot be obtained from the device.

According to MPD, prior to being apprehended the four defendants carjacked and robbed several citizens in the Washington D.C. metropolitan area of their personal belongings and vehicles. The four defendants reside in the SIMPLE CITY DWELLING, which is a known location for dumping stolen vehicles and criminal activity.

## SUMMARY OF RELEVANT TECHNOLOGY

A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

6

downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

Your affiant has consulted with forensic cell phone examiners who regularly conduct examinations of cell phones and has learned the following. Conducting cell phone examinations is a highly technical process using specific tools for which the examiners receive training. During the extraction process, examiners are not able to parse the data in specific date ranges or to limit the search to an earlier date range. In some cases, deleted files or fragments of files may not contain date and time stamps. As a result, examiners are typically unable to extract cell phone contents only within a specified date range.

## PROBABLE CAUSE

Based upon the facts and circumstances presented with this affidavit, your affiant believes that probable cause exits that the phone described above contains evidence related to the interstate transportation of stolen vehicles and property, bank fraud, robbery, carjacking, unauthorized use of motor vehicles, and conspiracy to commit such offenses. Specifically, your affiant believes the cell phone's electronically stored contents, including but not limited to, evidence of ownership and phone number associated with said phone, address books, call logs, photographs, voice mail messages, text messages sent and received, digital content sent and received, stored digital content (photographs and videos) will assist in identifying the perpetrators of the offenses, communication taking place before and after the offenses, communication between the Drivers and Passengers that would be evidence of the conspiracy to commit the offenses. In addition, persons who own and possess weapons often photograph themselves with their weapons. Such photographs are often stored on cellular phones.

Therefore, your affiant requests a warrant to search the aforementioned cellular telephones seized from the compartment of the stolen vehicle and on the ground near where the defendants were apprehended, and to seize all electronically stored content, including, but not limited to, phone number associated with said phone, call logs, contacts, photographs, voice mail messages, text messages sent/received, digital content sent and received, stored digital content (photographs and video), any other stored electronic data.

_____
Sonia Bush, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this _____ day of February, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA